IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3082-D

LARRY BLAKNEY,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )              **ORDER**
                                        )
DR. LOGAN GRADDY and CHARLES            )
CLOUTIER,                               )
                                        )
                    Defendants.         )

On August 2, 2024, Larry Blakney ("Blakney" or "plaintiff"), proceeding pro se and in forma pauperis, filed an amended complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and alleged that Warden Scarantino ("Scarantino"), Dr. Logan Graddy ("Graddy"), Charles Cloutier ("Cloutier"), and Laura Sheras ("Sheras") (collectively, "defendants") violated the Eighth, Fourteenth, and Fifth Amendments of the United States Constitution in connection with alleged forced administration of Blakney's antipsychotic medications [D.E. 15]. Blakney seeks compensatory and punitive damages, cessation of the forced administration of the medication, Haldol, and release from the Federal Bureau of Prison's ("BOP") custody. See id. at 8. On August 14, 2024, the court reviewed the amended complaint and allowed the Bivens action to proceed [D.E. 17].

On December 3, 2024, defendants moved to dismiss or for summary judgment [D.E. 34]. See [D.E. 35, 36, 37]. Blakney did not respond. On June 17, 2025, the court construed Blakney's Fourteenth Amendment due process claim as one under the Fifth Amendment only, granted defendants' motion to dismiss Blakney's Fifth Amendment due process claim for monetary

damages regarding forced medication, and denied the motion as to Blakney's request for injunctive relief. See [D.E. 40] 14. The court also granted defendants' motion to dismiss Blakney's Eighth Amendment claim against Scarantino and Sheras, but denied the motion as to Blakney's Eighth Amendment claim against Graddy and Cloutier. See id. The court directed Blakney to show cause as to why the action should not be dismissed without prejudice for failure to prosecute. See id. Blakney responded to the show cause order and defendants' motion to dismiss or for summary judgment. See [D.E. 41, 42]. On August 20, 2025, the case was reassigned to the undersigned. [D.E. 46].

On January 8, 2026, Graddy and Cloutier filed a second motion to dismiss or for summary judgment [D.E. 52], and sought leave to file excess pages [D.E. 56]. See [D.E. 53, 54, 55]. Because Graddy and Cloutier attached materials outside the scope of the pleadings, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). The court notified Blakney about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 57]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Blakney did not respond. As explained below, the court grants Graddy's and Cloutier's motions for summary judgment and to file excess pages.

I.

Blakney is civilly committed to the custody of the United States Attorney General pursuant to 18 U.S.C. § 4246. See Def.'s Stmt. Mat. Facts ("DSMF") [D.E. 54] ¶ 1.[1] Blakney was

---

[1] A party's statement of undisputed material fact is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); see Fed. R. Civ. P. 56(e)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care

2

incarcerated at the Federal Medical Center in Butner, North Carolina ("FMC Butner"), at the time of his commitment and during the time relevant to the amended complaint. See id. ¶ 3. Blakney has schizoaffective disorder, bipolar type, and antisocial personality disorder. See id. ¶ 4. On November 13, 2023, BOP staff at FMC Butner told Blakney he was being referred for a hearing to determine if BOP medical staff should be authorized to administer antipsychotic medication without his consent. See id. ¶ 5. BOP staff told Blakney the proposed hearing date, time, place, and purpose. See id. ¶ 6. Blakney did not request a staff representative. See id. ¶ 7. Nevertheless, a BOP pharmacist served as Blakney's staff representative for the hearing. See id.

On November 15, 2023, Cloutier, a BOP psychiatrist, presided over the involuntary medication hearing. See id. ¶ 8; see also Washington v. Harper, 494 U.S. 210, 215–16 (1990); BOP Program Stmt. [D.E. 55-3]. Blakney attended the hearing. See DSMF ¶ 9. During the hearing, Cloutier considered a wide range of evidence, including the court order authorizing commitment for hospitalization and treatment, notice of hearing and advisement forms, testimony and statements of Blakney's primary mental health clinicians, and BOP medical and mental health records. See id. ¶ 10. Graddy, Blakney's treating psychiatrist, and Sheras, Blakney's treating psychologist, testified orally and through a jointly-authored memorandum discussing clinical data and background information of Blakney, as well as information outlining Blakney's need for psychiatric medication. See id. ¶¶ 11–12. Graddy and Sheras testified that Blakney posed a significant threat of danger to other inmates and staff. See id. ¶ 12. Blakney's staff representative testified on Blakney's behalf stating Blakney did not wish to be medicated and inquired about potential side effects of psychiatric medication. See id. ¶ 13.

_____

Servs., Inc., No. 7:14-CV-113, 2017 WL 1030706, at *1 n.1 (E.D.N.C. Mar. 15, 2017) (unpublished).

3

At the conclusion of the hearing, Cloutier approved involuntary medication for Blakney "because [his] mental illness" made him "dangerous to himself or others." Id. ¶ 14. Cloutier reasoned that Blakney had exhibited aggressive and threatening behavior which had recently escalated to displaying physically violent behavior toward the officer on his housing unit. See id. ¶ 15. Cloutier found Blakney acted violently in response to symptoms of his undertreated mental illness and noncompliance with voluntary medication. See id. ¶ 16. Cloutier also found that alternative treatments would not treat the basic pathology of Blakney's mental illness. See id. Blakney received a copy of the hearing report and notification of his right to appeal Cloutier's decision. See id. ¶¶ 17, 44. Cloutier had no further involvement with Blakney. See id. ¶ 45.

Blakney appealed. See id. ¶ 18. On November 29, 2023, the Warden issued a written response denying Blakney's appeal based on his findings that Blakney had received all necessary procedural protections and that the justification for involuntary medication was appropriate. See id. ¶ 19. On December 7, 2023, Graddy ordered that Blakney take Risperidone in conjunction with Aripiprazole to treat his psychotic disorder and acute symptoms. See id. ¶ 20. Graddy also ordered the oral tablet form of Risperidone after discussing with Blakney the potential for weight gain. See id. ¶ 21.

On December 21, 2023, FMC Butner staff performed laboratory tests on Blakney and the results indicated the antipsychotic medication was not in Blakney's blood. See id. ¶ 22. On January 19, 2024, Graddy attempted to follow up with Blakney, but Blakney refused to engage. See id. ¶ 23. On February 7, 2024, FMC Butner staff transported Blakney to an outside hospital emergency department due to ketoacidosis. See id. ¶ 24. Upon Blakney's return to FMC Butner, medical staff diagnosed him with Type 2 Diabetes Mellitus and began treatment to manage his diabetes. See id. ¶ 25.

4

FMC Butner medical staff conducted blood tests on Blakney again on March 4, April 3, and May 3, 2024, and each showed no levels of Risperidone or Aripiprazole in Blakney's blood. See id. ¶ 26. On May 22, 2024, Graddy reviewed the laboratory results and concluded Blakney was diverting medication. See id. ¶ 27. Graddy met with Blakney and Blakney reiterated his unwillingness to consume psychotropic medication by any means. See id.

On May 30, 2024, Graddy adjusted Blakney's medication to injectable Haloperidol, which Graddy determined was less likely to exacerbate Blakney's diabetes. See id. ¶ 28. Blakney's September 2024 medical records indicate his diabetes and renal function were improving with insulin and Semaglutide. See id. ¶ 29. Blakney's body mass index and weight showed steady decrease. See id.

## II.

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v.

5

Harris, 550 U.S. 372, 378 (2007). Only disputes over facts that might affect the outcome of the suit under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

Blakney alleges Graddy and Cloutier were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See [D.E. 15] 5–7. To establish that claim, "the plaintiff is required to prove an objective component and a subjective component." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). The objective component requires a "serious" medical condition either "diagnosed by a physician as mandating treatment" or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); see Farmer v. Brennan, 511 U.S. 825, 834 (1994); Short v. Hartman, 87 F.4th 593, 612 (4th Cir. 2023), cert. denied, 144 S. Ct. 2631 (2024); Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The subjective component "requires the prison official to have acted with a sufficiently culpable state of mind, specifically, deliberate indifference to inmate health." Langford v. Joyner, 62 F.4th 122, 124 (4th Cir. 2023) (cleaned up); see Farmer, 511 U.S. at 834. Deliberate indifference requires a prison official to have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Langford, 62 F.4th at 124 (citation omitted).

Blakney alleges Graddy and Cloutier forcibly medicated him with antipsychotic medications despite knowing the prescribed medications could increase his blood sugar levels and place him at higher risk of developing diabetes. See [D.E. 15] 5–7. There is no evidence that Cloutier had personal involvement with the ordering, administration, or modification of any medications for Blakney outside of Cloutier's role in the involuntary medication hearing. See DSMF ¶ 45. And although Graddy did provide Blakney treatment, there is no evidence that Graddy acted with deliberate indifference to Blakney's risk of developing diabetes. There also is

6

no evidence that the medications Graddy prescribed caused Blakney to develop diabetes. Instead, the record reflects Blakney was diverting his prescribed antipsychotic medications and did not take the prescribed medications before his diabetes diagnosis. See id. ¶¶ 22–27.

The record also belies Blakney's contention that Graddy and Cloutier increased the dosage of his antipsychotic medications after his diabetes diagnoses knowing it was detrimental to his health. The record reflects an improvement in Blakney's diabetes and renal function after he began the Haloperidol injections and diabetes treatment. See id. ¶¶ 28–29. Blakney's Eighth Amendment claims merely constitute a disagreement over the proper course of treatment. See, e.g., Hixson v. Moran, 1 F.4th 297, 302–03 (4th Cir. 2021); Bridges v. Keller, 519 F. App'x 786, 787 (4th Cir. 2013) (per curiam) (unpublished); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Perkins v. Daniels, No. 24-CV-1094, 2024 WL 2980670, at *4 (D. Minn. Apr. 12, 2024) (unpublished), report and recommendation adopted, 2024 WL 2978332 (D. Minn. June 13, 2024) (unpublished), aff'd, No. 24-2448, 2024 WL 5319088 (8th Cir. Oct. 1, 2024) (mem.); McCoy v. Prison Health Servs., No. 07-515, 2009 WL 1939162, at *7 n.5 (W.D. Pa. June 30, 2009) (unpublished). Such a disagreement does not constitute an Eighth Amendment claim.

The alleged ineffectiveness of Graddy's and Cloutier's efforts in diagnosing and treating Blakney's medical needs also does not give rise to a constitutional violation. See, e.g., Russell, 528 F.2d at 319; Williams v. Branker, 462 F. App'x 348, 354 (4th Cir. 2012) (unpublished) ("Williams points to no authority for the proposition that the Eighth Amendment entitles him to 'effective' treatment . . . ."). At most, their conduct could be construed as negligence, which is not sufficient to state a constitutional violation. See Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

7

Thus, Blakney's Eighth Amendment claim fails.[2]  The court declines to address Graddy's and Cloutier's argument that they are entitled to qualified immunity.  See Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 n.7 (2018).

The court next addresses Blakney's Fifth Amendment claim seeking a court order directing cessation of the forced medication, Haldol, and his release from the BOP's custody.  See [D.E. 15] 5–8.  Generally, inmates possess a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fifth Amendment to the United States Constitution.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); cf. Harper, 494 U.S. at 221–22.  That interest "may only be overcome by an essential or overriding state interest" because "[w]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." United States v. White, 620 F.3d 401, 409 (4th Cir. 2010) (cleaned up).  In Harper, the Court held that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."  494 U.S. at 227.  To comport with due process, the administrative hearing need only provide the prisoner with notice of the hearing, the right to be present, and the right to confront witnesses.  See id. at 228; Graves v. MidHudson, No. CV-04-3957, 2006 WL 3103293, at *4 (E.D.N.Y. Nov. 2, 2006) (unpublished).  This extends to involuntary medication in the civil commitment context.  See, e.g., Victor B. P. v. Daniels, No. 19-CV-2663, 2021 WL 3476710, at *10 (D. Minn. Apr. 12, 2021) (unpublished) (citation omitted),

---

[2] In light of the Fourth Circuit's recent decision in Spivey v. Breckon, __ F. 4th __, 2026 WL 1060429, at *6 (4th Cir. Apr. 20, 2026), the Bivens remedy also is unavailable to Blakney for his Eighth Amendment claim for monetary damages.

8

report and recommendation adopted as modified sub nom. Perkins v. Daniels, 2021 WL 2981286 (D. Minn. July 15, 2021) (unpublished).

Blakney received advance notice of the hearing, his right to be present, staff representation at the hearing, and his right to call witnesses. DSMF ¶¶ 6–9; see also 28 C.F.R. § 549.46(a). At the conclusion of the hearing, Cloutier found that the involuntary administration of antipsychotic medication was in Blakney's best medical interest because Blakney had exhibited aggressive and threatening behavior in response to symptoms of his undertreated mental illness making him a danger to others. DSMF ¶¶ 14–16; see also 28 C.F.R. § 549.46(a)(7). Thus, Graddy and Cloutier did not violate due process and Blakney's request for injunctive relief fails.

III.

In sum, the court GRANTS defendants' motion for leave to file excess pages [D.E. 56], and GRANTS defendants' unopposed motion for summary judgment [D.E. 52]. The clerk SHALL close the case.

SO ORDERED. This _5_ day of May, 2026.

JAMES C. DEVER III
United States District Judge

9